CONVENTION OF THE PROTESTANT EPISCOPAL CHURCH ET AL. *v.* WILLIAM J. TODD ET AL.
[No. 54, October Term, 1931.]

*Decided January 13th, 1932.*

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Parke, and Sloan, JJ.

*Edward N. Rich* and *Thomas F. Cadwalader,* for the appellants.

*James McC. Trippe,* for the Hospital for Consumptives of Maryland, appellee.

*Raymond S. Williams,* for the Maryland Institute for the Promotion of the Mechanic Arts, appellee.

*Edgar Allan Poe,* submitting on brief, for the Hospital for Women of Maryland, appellee.

*William Pepper Constable* and *Charles Carroll, Jr.,* submitting on brief, for the Anchorage of Baltimore City, appellee.

*H. H. Hackney,* submitting on brief, for the Children's Home of Baltimore, appellee.

*William S. Levy,* submitting on brief, for William J. Todd, appellee.

Urner, J., delivered the opinion of the Court.

The will and two codicils to be construed in this case were executed by Emilla Mather, of Baltimore, who died on August 6th, 1918. The date of the will was June 19th, 1913, and the codicils were signed, respectively, on December 5th, 1914, and June 8th, 1918. An estate worth approximately $45,000 was available for distribution under the terms of those instruments. The first disposing clause in the will is as follows:

> "I give, devise and bequeath unto the Fidelity Trust Company, a body corporate, of the State of Maryland, a sufficient portion of my Estate, the same to be selected and set aside by my executors hereinafter

named, to yield an annual net income of Four Hundred and Eighty dollars, in trust, to pay the said income in equal monthly installments to my brother, James Francis Mather, for and during his lifetime, and after his death the trust shall cease and the same shall fall into and become a part of the residue of my estate, to be disposed of as the said residue is hereinafter disposed of."

This clause was followed in the will by pecuniary bequests aggregating $29,000. The residuary clause was in the following form:

"All the rest and residue of my Estate of every kind and description, wheresoever situate, I give, devise and bequeath unto Dr. Walter S. Haven, of Racine, Wisconsin, in trust, for the use and benefit of the College in Beloit, Wisconsin, generally known as the Beloit College, from which said Dr. Haven was graduated."

The first codicil made additional pecuniary bequests amounting to $9,500. It contained the following provision:

"Should the value of my estate prove insufficient to pay all the legacies provided for in my will and this Codicil in full, I direct that the legacies for the use of my brother, the one to my cousin, John Mather, the one to my cousins Minnie Fontayne and Charles H. Fontayne, and the one to my friend, Martha Virginia Steelman and Anna M. Stringer, shall be first paid in full by my executors and all the other legacies, except the one regarding the disposition of my household effects, shall be pro rated among the various legacies hereunder."

The second codicil revoked a bequest of $1,000 in the will, and also provided as follows:

"First: I hereby change the provision in Item First of my said Will for the benefit of my brother, James Francis Mather, by changing the words in said Item to yield an annual net income of Four Hundred and Eighty dollars (480), to read 'to yield an annual net income of Six Hundred Dollars ($600),' it being my

intention and desire that my said brother shall receive from the Trust Estate created by me for his benefit the sum of Fifty dollars ($50) a month during his lifetime."

"Third: I revoke and annul Item Thirteenth of my said Will, wherein I devised and bequeathed the rest and residue of my estate unto Dr. Walter S. Haven of Racine, Wisconsin, in trust for the use and benefit of the college at Beloit, Wisconsin, generally known as the Beloit College; and in place thereof I do hereby give, devise and bequeath all the rest and residue of my estate of every kind and description, and wheresoever situate, unto The Convention of the Protestant Episcopal Church in the Diocese of Maryland for the use of the Trustee of the Hannah More Academy for the establishment of a 'Mather Memorial' in the Hannah More Academy of such nature as Miss Anna L. Lawrence, the present principal, may elect and determine; provided, however, that should I survive the said Miss Anna K. Lawrence or should she sever her connection with said Hannah More Academy before my death, then and in that event the aforesaid 'Mather Memorial' shall be of such nature as the Trustees of Hannah More Academy shall elect and determine."

The provision in the first codicil that certain legacies should be "pro rated" if the estate should not be sufficient to pay all the legacies in full was repeated in identical terms by the second codicil.

The portion of the estate segregated by the executors and transferred to the trustee under the will, to produce the specified income for the brother of the testatrix, amounted to $10,506.70, and the other legacies directed to be paid in full totaled $7,000. After provision was made for those legacies, the remaining estate was not sufficient to pay in full the other pecuniary legacies, which amounted to $30,500, and being accordingly prorated, as the codicils provided, they were paid to the extent of eighty-six and nine-tenths per cent. of their respective amounts.

The trust created for the benefit of James Francis Mather, brother of the testatrix, was terminated by his death on November 9th, 1930, and the question now presented for decision, on petition of the Fidelity Trust Company, as surviving executor and trustee, is whether the deficiency in the payment of the prorated legacies should be supplied out of the estate heretofore held in trust, which, upon the brother's death, was "to fall into and become a part of the residue," as provided by the will. It was the view of the lower court that provision should thus be made for the payment, with interest, of the difference between the prorated amounts of the legacies and the sums primarily bequeathed. From a decree giving effect to that conclusion, the Convention of the Protestant Episcopal Church in the Diocese of Maryland, and the trustees of the Hannah More Academy, as devisees and legatees of the residuary estate, have appealed.

No case has been cited, and we have discovered none, sufficiently analogous to be of material aid in the interpretation of the testamentary provisions which we have quoted. They differ in important respects from those involved in any of the cases suggested as possible precedents. It would indeed be surprising if another judicially construed will were found containing in combination the special provisions which we have now to interpret. The discussion in this opinion will therefore be confined to the analysis of the particular and distinctive terms of the will and codicils reproduced in the present record.

The "sufficient portion" which the testatrix devised and bequeathed in trust for her brother's benefit during his life was not simply "to fall into and become a part" of the residue of her estate after his death, but was "to be disposed of" as subsequently provided for the disposition of the residue. The pecuniary legacies now proposed to be supplemented were not unqualified gifts of the designated sums, but were required to be prorated if the estate should be inadequate for their payment in full after satisfaction of the preferred bequests. In our opinion, those provisions are not compatible

with an intention of the testatrix that the residuary disposition should be subordinated to the eventual payment in full of the prorated legacies.

Until the pecuniary legacies were increased in number by the first codicil, the testatrix apparently considered her estate sufficient for the payment in full of those which she had already bequeathed. The pro rata abatement, conditionally required by the codicils, was to occur in the event of a deficiency of estate value at the time when all of the legacies would regularly be payable. It was then that the necessity and measure of the directed pro rata reduction of certain legacies would have to be determined. There is no suggestion in any provision of the will or codicils that the abated legacies should be restored to their original amounts for the purpose of being charged, to the extent of the abatements, against a portion of the estate which would be held under the prescribed trust until a possibly distant period in the future, and be then subjected to the residuary clause expressly for disposition as therein provided.

The direction in the will, that after the brother's death the portion of the estate held in trust for his benefit should become a part of the residue and be "disposed of" as the residue is thereinafter disposed of, was equivalent to an adoption of the devise and bequest in the residuary clause for the purpose of disposing of the trust estate in remainder. As stated by Mr. Miller, in his valuable work on *Construction of Wills*, p. 167: "In all cases the meaning and application of a devise or bequest in respect of the residue depends upon the intention of the testator, rather than upon any fixed rules of interpretation." The expressed intention here is that after the expiration of the life interest the distinct property composing the trust estate shall go to the devisee and legatee designated in the residuary clause. The disposition by the will of that segregated property may well be regarded as a specific devise and bequest and as being preferred for that reason to general legacies with respect to a deficiency of the estate. *Bristol v. Stump*, 136 Md. 236, 110 A. 470. But the present question is one of testamentary intent, to be ascertained from

the particular terms which the testatrix has employed to declare her purpose, and our duty is rather to effectuate what we consider her manifested intention than to determine upon a technical classification of its expression.

In view of the conclusion which we have stated, a decision of other questions presented by the appeal becomes unnecessary.

*Decree reversed, and cause remanded for a decree in conformity with this opinion; the costs to be paid out of the trust estate.*